# Fred K. Gloyd, Appellant, v. Hotel La Salle Company, Appellee.

## Gen. No. 26,458.

1. CONSTITUTIONAL LAW—*presumption of constitutionality in Appellate Court.* All statutes are deemed constitutional in the Appellate Court until pronounced otherwise by the Supreme Court.

2. ASSUMPSIT, ACTION OF—*when action for money had and received lies.* An action for money had and received may be maintained whenever a person has money in his possession, however he may come by it, which *ex aequo et bono* he has no right to retain.

3. ASSUMPTSIT, ACTION OF—*when action for money had and received lies.* An action for money had and received may be maintained for money obtained *mala fide* or through imposition, extortion or oppression, or where an undue advantage is taken of the situation of the plaintiff contrary to law, or when a person has wrongfully paid money, or for money paid by mistake or upon a consideration which fails, and in all cases where the circumstances are such that in natural justice and equity the money so acquired should be refunded.

4. CORPORATIONS—*when contract by hotel company as to tips not ultra vires.* A contract made by a hotel company employing defendant as a checker with a condition that the tips received by him should be the property of the hotel was not ultra. vires, as it related to the business of the hotel and the duties of plaintiff in such employment.

5. MASTER AND SERVANT—*when contract giving tips to employer not against public policy.* A contract between a hotel company and an employee providing that all tips received by such employee should be the property of the company is not contrary to public policy.

6. PAYMENTS—*when voluntary payments not recoverable.* Where a hotel employee, in accordance with his contract of employment, turned over to his employer the money received from customers as tips and there was no pretense of coercion on the part of the employer or that any threat was made to the employee under stress of which any of the money was paid over, and the matter was so well understood that there was no dispute or discussion and no claim to such tips was made when his employment was terminated nor for over a year thereafter, he cannot recover the money so paid over in an action for money had and received.

7. PAYMENT—*right to recover payments made under illegal contract.* A former hotel employee suing to recover tips received by him and turned over to the hotel company in accordance with his contract of employment can secure no right by virtue of the Anti-tipping Statute [Hurd's Rev. St. 1919, secs. 560-562, Callaghan's 1916 Stat. ¶¶ 3949(1)-3949(3)] as he was *in pari delicto* with defendant and could not maintain an action thereunder.

8. PAYMENT—*right to recover payments made by mistake.* If gratuities were turned over by a hotel employee to his employer under a mistake of law and without fraud or mistake of fact they could not be recovered.

9. PAYMENT—*right to recover voluntary payments.* Money voluntarily paid cannot be recovered in an action at law.

Appeal from the Superior Court of Cook county; the Hon. JOSEPH B. DAVID, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed May 16, 1921.

LEWIS H. CRAIG, for appellant.

PRICE & MARTIN, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from a judgment of *nil capiat* entered upon a verdict instructed by the learned trial judge.

The constitutionality of the so-called "Anti-tipping Statute," being sections 560, 561 and 562 of the Criminal Code, Rev. St. 1919 [Callaghan's 1916 Stat. ¶¶ 3949(1)-3949(3)], is argued.

All statutes are constitutional in this court until pronounced otherwise by our Supreme Court, but aside from the statute itself, as will hereinafter appear, plaintiff cannot maintain this action.

At the conclusion of plaintiff's proofs the court instructed a verdict for defendant upon the legal theory that as a matter of law the verity of plaintiff's evidence being assumed, he was not entitled to recover.

The defendant is the proprietor of the Hotel LaSalle in Chicago and employed plaintiff as a checker

of the garments of guests. He was assigned as checking attendant of the men's grill room, a restaurant, on the first floor of said hotel. This was on February 29, 1916, and it was agreed between plaintiff and defendant's superintendent of checkers that plaintiff could have the position at a salary of $16 a week, with a uniform furnished by defendant; that he was to work three different periods each day, during the time of breakfast, luncheon and dinner, except on Sunday, when he was not on duty at breakfast and sometimes not at luncheon, but was on duty at dinner. He continued in this employment until January 15, 1918.

When he entered upon the employment plaintiff was told by the superintendent of checkers that all tips were to be turned in to the hotel and were to be its property. This agreement was lived up to by plaintiff from the time of his employment until his discharge, a period of two years lacking about six weeks. The method of delivering these tips to defendant was this: Plaintiff, three times a day, at breakfast, luncheon and dinner, whenever he was in attendance, would, before going off duty at these meal times, take the tips, put them in an envelope provided by the hotel for that purpose, write his name, the date and the word "dinner," "luncheon" or "breakfast" upon the envelope, and before leaving the hotel would give it to the superintendent of checkers, or in his absence place it in the drawer which was at the check stand in the basement of the hotel, which envelopes were then turned over to the general cashier of the hotel.

Plaintiff never claimed from the hotel or its superintendent of checkers as his own property the tips he had received or made any demand for them or any of them, or made any complaint regarding the disposition of said tips, but regularly, three times a day on week days and once or twice on Sunday, when he was on duty, turned over the tips to the hotel in the manner described.

Plaintiff left his employment at the hotel January 15, 1918, and not until March, 1919, did he question the binding force of his contract with the hotel regarding the tips, but he did, about fourteen months after quitting defendant's employ, make a demand upon it for the restitution to him of all the tips turned into the hotel by him during his employment, which he then, for the first time, claimed to be his own money.

Plaintiff was paid his wages weekly, giving each time a written receipt therefor. Plaintiff testified that he never told any of the guests from whom he received the tips that he was required to turn them over to the hotel.

It is argued for reversal that the court should not have instructed a verdict, that the evidence presented questions of fact for the jurors' determination as to whether there was any contract between the parties that the tips should be the property of defendant, and that the court erred in holding that any contract to turn over such tips to defendant was against public policy, and in not holding that if any such contract existed it was ultra vires as to defendant.

Plaintiff has preserved in the record the oral reasons given by the trial judge for the conclusion at which he arrived in directing a verdict. We have perused the same with some interest and in the main they meet with our approval.

The counts in the declaration are for money had and received by defendant for the use of plaintiff, and counsel argue interestingly and with much force that under the maxim *ex æquo et bono* plaintiff is entitled to recover. The principle so relied upon is that whenever a person has money in his possession, however he may have come by it and which *ex æquo et bono* he has no right to retain, the person to whom it belongs may maintain an action for it as for money had and received. The action also lies for money obtained *mala fide* or through imposition or extortion or op-

pression, or where an undue advantage is taken of the situation of the plaintiff contrary to law, or whenever a person has wrongfully paid money, it may be recovered in such form of action. 4, Wait's Actions and Defenses, 469-471. In this regard such an action is kin to a bill in equity and may be maintained whenever it appears that in equity and good conscience the money ought to be refunded. It would also lie for money paid by mistake or upon a consideration which fails, and in all cases where the circumstances are such that in natural justice and equity the money so acquired should be refunded. *Watson v. Woolverton,* 41 Ill. 241; *Kearney v. Webb,* 278 Ill. 17.

The contract of employment of plaintiff as a checker and the conditions thereof, including the agreement that the tips received by plaintiff should be the property of defendant, was not a contract *ultra vires* of the charter powers of defendant, because such contract related to the business of the hotel and the duties of plaintiff in such employment. Neither was such contract contrary to public policy. The terms of the contract were ratified three times daily, except on Sundays, and then once or twice, by plaintiff paying over to defendant the money received by him as gratuities. There is no pretense of coercion on the part of defendant, or that any threat was made to plaintiff under the stress of which any of the gratuity money was paid over. The matter was never disputed by either of the parties. It was so well understood that there was no occasion for discussion, and the clear inference deducible from the actions of plaintiff is that he regarded such gratuities as the property of defendant under the contract of employment, and so believing turned them into the hotel as its funds. When he left such employment involuntarily he made no claim for such money, nor did he at any time make any complaint regarding these gratuities. Not until nearly fourteen months after the severance of the relation-

ship between the parties did plaintiff make any demand for the money or make any claim or suggestion that these gratuities or any part of them were his property.

The contract in this case was not contrary to public policy as such policy is defined in *Wakefield v. Van Tassell*, 202 Ill. 41, as that principle of the law which holds that no subject or citizen can lawfully do that which has a tendency to be injurious to the public or against the public good. The public could in no way be affected by the ultimate disposition of these gratuities.

Plaintiff can secure no right by virtue of the so-called "Anti-tipping Statute," *supra,* as by section 561 [Callaghan's 1916 Stat. ¶ 3949(2)] it is provided that "Any lease, contract, agreement or understanding entered into in violation of the provisions of section 1 of this act shall be absolutely void."

If defendant transgressed the statute in its contract with plaintiff for the gratuities, then, as plaintiff was a party to such contract condemned by the statute, he, being *in pari delicto* in offending against it, cannot maintain an action. *Goodrich v. Tenney,* 144 Ill. 422; *Lamb v. Tomlinson,* 261 Ill. 388.

If the gratuities were turned over to defendant by plaintiff upon a mistake of law and without fraud or mistake of fact, they cannot be recovered. *Yates v. Royal Ins. Co.,* 200 Ill. 202.

Money voluntarily paid, as was the money in dispute in this case, cannot be recovered in an action at law. *Illinois Glass Co. v. Chicago Tel. Co.,* 234 Ill. 535, in which it was held that the rule that money paid under a claim of right, with full knowledge of all the facts by the party making the payment and without fraud or misrepresentation or mistake of fact, cannot be recovered upon the ground that the claim was unlawful unless the payment was made under circumstances amounting to compulsion. And it was likewise

held that to render a payment compulsory, such pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, and the compulsion must furnish the motive for making the payment. And proof that one party was under no legal obligation to pay money and that the other had no right to receive it is of no consequence, unless the payment was compulsory in the sense of depriving the party paying of his free will.

Plaintiff does not claim that any of these elements were present in his contract of hiring or at any time. when he made any of the payments to defendant, which he did by the envelope system established under the contract.

The custom of giving gratuities to servants is a practice imported from Europe, and is in its essence un-American, notwithstanding its wide prevalence in this country.

The direct question here involved has never, so far as we know, been before our Supreme Court for decision. Our attention, however, is called to two cases which plaintiff argues are controlling, viz.: *Zappas v. Roumeliote,* 156 Iowa 709, and *Polites v. Barlin,* 149 Ky. 376. We do not regard either of these cases as comparable to the instant one.

The rule is laid down in the *Polites* case that money paid under a mistake of law can be recovered, which is contrary to the holding of the courts in this State and most of the courts in this country and in England, in which the doctrine is uniformly held that money voluntarily paid can only be recovered when paid under a mistake of fact. In the *Zappas* case there was no agreement that the gratuities should be paid to the plaintiff's employer. Zappas, who was a young Greek, newly arrived in this country at the time of his employment and unable to speak English, did not know for a year afterwards that the gratuities given him

were intended as gifts to him personally, and, in igno-
rance of that fact paid them to his employer.

There is no reversible error in this record, and the
judgment of the superior court is affirmed.

*Affirmed.*

DEVER, J., concurs.
McSURELY, J., dissents.