## FELDMAN v. ROSCHELLE BROS. INC.

District Court, S. D. New York.

Dec. 29, 1942.

Melton, Lebovici & Arkin, of New York City (Herbert Lebovici, of New York City, of counsel), for plaintiffs.

Allan S. Feldman, of New York City, for defendant.

CONGER, District Judge.

This is an action under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. Section 216 of the Act provides that an employer who violates any of the terms of the Act shall be liable to the employee or employees in the amount of the unpaid wages or overtime plus an additional amount as liquidated damages. In the event of a judgment in favor of the employee an allowance for reasonable attorneys fees is provided for. It is conceded that the Act applies to the defendant employer. The sole question is one of fact as to whether or not these two plaintiffs worked overtime in defendant's shop.

I allowed an amendment to the complaint at the trial making Seymour Messinger a party plaintiff.

The deposition of Herbert Feldman was read into evidence at the trial (Feldman now being in the United States Army). Feldman stated he went to work for the defendant on or about October 30, 1939, at a salary of $22 per week; that he came to work at 8 a.m. every day and left at 5:45 p.m. on Monday, Wednesday and Friday so he could attend classes in night school and at 6:30 p.m. on Tuesdays and Thursdays; that he worked Saturdays from 8 a.m. to 4 p.m.; that he took an hour for lunch each day; that these hours continued until the end of December, 1939, when he started to come in at 8:30 a.m. and worked until 5:30 p.m. on week days and from 9 a.m. to 3 p.m. on Saturdays; that about the beginning of May, 1940, his hours changed to those of the period from October, 1939, to December, 1939, as above stated and that those hours continued until the end of December, 1940; that from the end of December, 1940, until April, 1941, his hours were the same as those from December, 1939, to May, 1940; that commencing in April, 1941, he worked from 8 a.m. to 7 p.m. and on Saturdays from 8 a.m. to 6 p.m. and that this lasted through September, 1941, at which time he went on a schedule of from 8:30 a.m. to 4 p.m. on Saturday and that this continued until his employment terminated on December 19, 1942; that in May of 1941 he was raised to $27 per week and that on December 6, 1941, to $35 a week. Feldman had no records from which to testify but testified entirely from recollection. He admitted on cross-examination that he took at least one day off in the period from October 30, 1939, to December 31, 1939; that he didn't know whether he was away from work any days in the period from January 1, 1940, to April 30, 1940, and from May 1, 1940, to October 23, 1940; that some days he left before 6:30 p.m. and other days after but that he was generalizing by making it 6:30; that he didn't know whether the place of business was closed on any Saturdays during the period from October 24, 1940, to December 31, 1940; that during the period from May, 1940, to October, 1940, the place of business might have been closed on a Jewish holiday; that he couldn't state the exact hours he worked in any one week or on any particular day.

The testimony of Messinger was substantially in the same vein. He was not sure whether he had any Saturdays off during the summer or not, stating that he may have or may not have. Messinger came to work in April, 1941, and his employment terminated January 10, 1942.

Both Messinger and Feldman stated that they opened and closed the shop along with the Roschelle brothers who ran the business.

The place of business was equipped with a burglar alarm system. The alarm system automatically records the time of the opening and closing of the premises. The operators of the system furnished a record of the opening and closings from April 11, 1941, to December 6, 1941, the date up to which overtime is claimed. The plaintiffs have used this record to compute the overtime worked, the theory being that Feldman and Messinger came and left at the same time as the Roschelle brothers who opened and closed the place.

A former employee of Roschelle brothers named Goldman, who worked as a salesman from April, 1941, to January, 1942, corroborated the plaintiff's testimony to this extent—that he usually returned to the premises about 4:30 p.m. and left about 5:30 p.m. and that Feldman and Messinger were usually working on the premises between those hours.

The defendant denies that either Feldman or Messinger ever worked overtime. The bookkeeper of the defendant testified that prior to September or October of 1941 no daily records were kept of the employees' time but that in the latter part of September a time card system was installed after a conversation with someone from the Wage and Hour Division (the plaintiffs testified that on the instructions of the bookkeeper they did not punch in until 8:30 although they came to work at 8 and punched out at 4:30 but continued to work); that she never told either plaintiff to punch the cards as they had testified she did; that Messinger was frequently absent due to illness; that the plaintiffs did not work after they had punched out for the day but they did sometimes hang around for awhile.

Two investigators from the manufacturers association, who in cooperation with the union make investigations of overtime complaints, testified that they had made investigations of defendant's place of business after 5 p.m. on December 15, 1941 and December 19, 1941 (these dates were subsequent to any claims made for overtime but Feldman had testified these investigators had caught him working when they made their investigation). The report for both dates was that there was no violation. Feldman was in the factory on December 19th but was not working. The investigation on December 15th disclosed that no one was working there when the investigators came. The investigator who made the investigation on December 19th was accompanied by a union investigator.

Jack Roschelle testified that they had a contract with the union providing for a forty hour week; that he was the president of Roschelle brothers; that Feldman never worked overtime; that Feldman was away from work occasionally; that during the summer Feldman and Messinger alternated working on Saturdays; that Messinger was frequently absent due to illness; that Feldman stayed after working hours to work on a coat he was making for his girl friend (now Feldman's wife, who testified that

she had come to the plant about a half-dozen times to meet Feldman and that it was about 5:45 p.m. when she came and that she left with Feldman about an hour later; she said that Feldman had made her a coat); that when the place of business was open on holidays only he and his brother came in; that Feldman occasionally left with him and his brother at the close of the day.

There is a clear cut issue of fact presented as to whether the plaintiffs were worked overtime. From the testimony one might very well deduce that plaintiffs did some work after 4:30 p.m. on occasions while employed by defendant and also that plaintiffs were absent from work on a number of occasions for which they were paid. The plaintiffs, particularly Messinger, exaggerated their claims as to the number of hours worked and the weeks for which they were claiming overtime.

If the plaintiffs were absent one day in any one week, the probabilities are that they did not work over the maximum allowed before payment of overtime for that week. The plaintiffs on many occasions left earlier than the time claimed and on other occasions later. They have no written records. Both plaintiffs testified only from their recollection.

The plaintiffs claim they worked before and after they punched their cards and this very fact that they claim to have participated in making a false record reflects on their credibility.

I believe the statement of Roschelle that there were a number of days that the plaintiffs were absent. No one knows what days they were.

If I accepted the testimony of the plaintiffs in its entirety, I would have a great deal of difficulty in computing the damages, but I do not accept their story as true in all respects. That being the case, it becomes impossible for me to determine during what periods the plaintiffs worked later than 4:30 p.m. From the evidence I cannot state any one week in which the plaintiffs worked overtime. Any assessment of damages I might make would be pure speculation under the facts.

While the law requires the defendant to keep a record of overtime, the failure of the defendant to so do is not evidence upon which I can compute these plaintiffs' overtime. The burden was on these plaintiffs to prove that they worked

250

overtime and how much overtime they worked. The evidence as to the claimed overtime for any of the periods is vague, uncertain and does not carry the quality of proof to induce conviction. I cannot make a guess as to when the plaintiffs worked overtime or for how long. That the plaintiffs' attorney well realized the nature of his proof is borne out in his brief wherein he states that the court may well overlook an occasional discrepancy, since for example Feldman made no claim for the Sundays he worked or for the evenings on which he made deliveries or on numerous other occasions when he put in extra hours.

The plaintiffs have failed to meet the burden of proof required of them. The complaint is dismissed.

If findings of fact and conclusions of law are submitted, they should be triple-spaced typed, and on five days' notice. Opposing counsel, if he be so disposed, should submit, on two days' notice, criticisms of the proposed findings, as counter findings will avail him nothing.