**TOWNSEND et al. v. NEW YORK CENT. R. CO. et al.**

No. 8177.

Circuit Court of Appeals, Seventh Circuit.

March 16, 1944.

Leon M. Despres and M. J. Myer, both of Chicago, Ill., for appellant.

M. L. Bluhm, Edwin Eckersall, and Sidney C. Murray, all of Chicago, Ill., Clive C. Handy, of New York City, and Harold E. Chistensen, J. R. Barse, Samuel Kassel, Theodore Schmidt, Vernon W. Foster, Chas. A. Helsell, Joseph H. Wright, Wm. T. Faricy, Nelson J. Wilcox, Lowell Hastings, William J. Milroy, Bruce E. Dwinell, and Milton V. Thompson, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal by plaintiffs from an adverse judgment in a suit to recover minimum wages required by the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. There are 1,091 plaintiffs, all of whom are employed as red caps by the eight railroad defendants. The case was tried to a court without a jury, upon stipulations of fact as well as documentary and oral testimony.

As had long been the custom, plaintiffs, prior to October 24, 1938, the effective date of the Act, received as their sole compensation tips or gratuities from those whom they served in and about the terminals and stations of the defendant companies. Prior to such date, each of the plaintiffs was served with a notice of an "Accounting and Guarantee Plan," by which they were informed that the carrier guaranteed, after the effective date of the Act, the minimum wage provided, with the requirement that tips received be accounted for to the extent necessary to make up such minimum wage.

■ Since the recent decision in Williams v. Jacksonville Terminal Co. (Jacksonville and Dallas cases), 315 U.S. 386, 62 S.Ct. 659, 662, 86 L.Ed. 914, there is little left for discussion or decision in the instant case. There, it was definitely decided that the Accounting and Guarantee Plan, "which leaves all tips with the red caps and assures them that [they] each would receive at least the minimum wage," was valid; in other words, tips received by a red cap must be accounted for to the extent necessary to make up his minimum

wage. The principal difference between the instant case and the Jacksonville case is that here plaintiffs had an opportunity under the pleadings and agreed statements of facts to prove, if they could, that their tip reports were inaccurate in the manner alleged, namely, that they had not received in tips as much as they had reported to their respective employer-defendants. Plaintiffs, in support of this contention, endeavored to prove that they were coerced into reporting tips in amounts greater than those actually received.

■ That the issue presented was one of fact cannot be doubted. Of the 1,091 red caps who were parties-plaintiffs, only 19 were called as witnesses. Not one of these 19 witnesses was an employe of the defendants, the Milwaukee, the Northwestern, the Rock Island, or the Santa Fe Railroads. So far as we are able to ascertain, there is not a scintilla of proof in support of the allegation that red caps employed by these railroads reported tips in excess of those actually received. There is no basis, therefore, for a judgment against these four defendants.

■ As to the remaining defendants, the matter of coercion was a sharply controverted question which the trial court evidently resolved against the plaintiffs. Moreover, this question of coercion is rather incidental to the main issue. After all, the question for decision below was whether the plaintiffs or any of them proved that they had not received the minimum compensation provided by the Act. On this issue, the court found:

"Each of the plaintiffs has failed to prove by a preponderance of the evidence that his respective employer-defendant failed to pay him the minimum wages prescribed by Section 6 of the Fair Labor Standards Act of 1938 (hereinafter referred to as the Act) for any pay-period during the time covered by this action."

The sole question here is whether that finding is substantially supported by the record.

■ Plaintiffs appear to advance the novel and, we think, erroneous theory that the burden was upon the defendants to prove that the tips reported were actually received by the employes. It was shown, by stipulation or otherwise, from the records of the defendants, the amount of tips reported by each of the plaintiffs, and where such amount was less than the mini-

mum wage that the difference was paid by the defendants. Plaintiffs having asserted as a basis for their right to recover that they had received less than the amount reported, the lower court concluded as a matter of law:

"The burden was on each of the plaintiffs to prove by a preponderance of the evidence that he did not receive the wages that he was entitled to receive under the Act from his respective employer-defendant for one or more specific pay-periods during the time covered by this action."

We think there can be no question concerning the correctness of this conclusion. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115; Epps v. Weathers, D.C., 49 F.Supp. 2; Feldman v. Roschelle Bros., D.C., 49 F.Supp. 247. Under plaintiffs' stated theory of liability, this burden required plaintiffs to establish not only that excessive tips were reported, but the amount thereof, as well as the pay period during which they were so reported. This is so, irrespective of the charge or proof concerning coercion, for the reason that it would be immaterial whether the reporting of tips in excess of the amount received was the result of coercion, mistake or otherwise.

Furthermore, even though the court had found that the 19 plaintiffs who testified had reported tips in amounts greater than received, as a result of coercion or for any other reason, such a finding could not support a judgment as to the remaining 1,072 plaintiffs. In addition, the testimony of the plaintiffs who testified was speculative and uncertain as to any amount which that particular plaintiff reported over the amount received. We agree with the lower court that the burden was upon each plaintiff to prove the amount reported in excess of that received before that plaintiff would be entitled to judgment. All of the plaintiffs having failed to offer proof in this respect, it follows that none of them were entitled to judgment.

Another contention advanced by plaintiffs deserves to be mentioned. It is argued that the Accounting and Guarantee Plan is void as to plaintiffs who work in Illinois, for the reason that it violates the public policy of the State as declared in Chap. 38, Secs. 551–553, of the Illinois Revised Statutes 1941. This provision makes unlawful any lease or permit of any space for any trade, calling or occupation, or for the exercise of any privilege by any person "for the purpose of accepting, demanding or receiving * * * gratuities or donations, commonly called tips, in addition to the regular, ordinary and published rate of charge for work performed, materials furnished or services rendered." The section then provides that the prohibition just quoted shall not apply to any employe receiving tips, if such tips "are not accounted for, paid over, or delivered, directly or indirectly, in whole or in part," to the employer, but are retained by such employe for his absolute and individual property. Gloyd v. Hotel La Salle Co., 221 Ill.App. 104, is the only case, so far as we are advised, where this Illinois provision has been construed. In that case, tips had been received by an employe and turned over to the employer. In a suit by the former, recovery was denied on the theory that the parties were in pari delicto. In effect, that is what the plaintiffs are attempting to do here. They are seeking to collect from their respective employer-defendants tips which they received and subsequently reported to their employer, and which such employer applied on their wages. It would appear that the holding in the Gloyd case is pertinent here.

Moreover, the provision relied upon only applies where tips are "in addition to the regular, ordinary and published rate of charge for work performed," etc. While plaintiffs assert that their service "was offered to passengers as a part of the service included in the regular, ordinary and published tariffs," we find nothing in the record to support the assertion. Certainly there was no proof that defendants at the time in question maintained any published rate of charge for services performed by red caps. The amount of compensation received for such service depended upon the willingness of the public to pay, and not upon any charge fixed or determined by the defendants. Such tips were not, therefore, in addition to any published rate of charge, but were the sole compensation received by plaintiffs unless such tips failed to equal the minimum wage requirements, in which case defendants were required to pay such deficiency. The Supreme Court in the Williams case considered and rejected contentions somewhat analogous. On page 408 of 315 U.S., on page 672 of 62 S.Ct., 86 L.Ed. 914, the court stated:

"It is said that if the carriers take credit for the tips as compensation for red cap service, it would be in effect a charge by

the terminals for a transportation service, and therefore, since the terminals have filed no covering tariff, a violation of § 6(7) of the Interstate Commerce Act, 34 Stat. 587, 49 U.S.C.A. § 6(7). Furthermore, petitioners assert § 2 of the same act, prohibiting special rates, is violated because by the carrier's regulations the indigent received the red cap service without charge. Neither contention, if true, would avail petitioners."

Defendants further contend that the Illinois provision is not controlling because it conflicts with the Fair Labor Standards Act as construed by the Supreme Court in the Williams case. In view of what we have said, we think it is unnecessary to consider or decide this contention.

The judgment is affirmed.