MAGANN v. LONG'S BAGGAGE TRANS-
FER CO., Inc.

No. 43.

District Court, W. D. Virginia, at Lynchburg.
July 5, 1941.

Edmunds, Whitehead, Baldwin & Graves, of Lynchburg, Va., for plaintiff.

D. H. Kizer & Sons, of Lynchburg, Va., for defendant.

BARKSDALE, District Judge.

This is a civil action brought by an employee against his employer for unpaid minimum wages, unpaid overtime compensation, and liquidated damages, the cause of action being grounded upon the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq.

Section 16 of the Act, 29 U.S.C.A. § 216, provides for the recovery by an employee of an employer of unpaid minimum wages, unpaid overtime compensation, and liquidated damages, in any court of competent jurisdiction, together with a reasonable attorney's fee and costs.

The plaintiff here seeks to recover unpaid minimum wages pursuant to Section 6 of the Act, 29 U.S.C.A. § 206, the pertinent provisions of which are as follows:

"§ 206. *Minimum wages; effective date*

"(a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

"(1) during the first year from the effective date of this section, not less than 25 cents an hour,

"(2) during the next six years from such date, not less than 30 cents an hour, * * *."

Plaintiff also seeks to recover unpaid overtime compensation under the provi-

sions of Section 7 of the Act, 29 U.S.C. A. § 207, the pertinent portion of which is as follows:

"§ 207. *Maximum hours*

"(a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce—

"(1) for a workweek longer than forty-four hours during the first year from the effective date of this section,

"(2) for a workweek longer than forty-two hours during the second year from such date, or  *  *  *."

This case having been tried by the court, upon the facts, without a jury, the court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, doth hereby find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment, as follows:

· Findings of Fact.

Defendant, Long's Baggage Transfer Company, Inc., a Virginia corporation, entered into a contract with the Post Office Department of the United States of America, by which, for an agreed compensation, it undertook to transport by motor vehicle the outgoing United States mails from the Post Office to the railway stations, and to transport incoming mails from the railway stations to the Post Office. These mails, including parcel post, included letters and parcels going to the various states of the Union and foreign countries, and also included such mail matter coming to Lynchburg, Virginia, from various states and foreign countries.

By the terms of the contract, the Post Office Department reserved for itself a considerable degree of supervision of the manner in which defendant should comply with the contract. Defendant, by the terms of the contract, was required to take the mail from, and deliver it into, the Post Office, railway depots and cars, at the points and at the hours directed by the Postmaster of said City, and to furnish the number of trucks that in the opinion of the Postmaster would be sufficient for prompt and proper performance of the service. Defendant agreed not to commit the care and transportation of the mails to any person under eighteen years of age, or any person who had not satisfied the Postmaster that he had good moral character and ability to perform the service, and only to such persons as had taken the oath prescribed by law, who could read and write the English language, and who had passed the required examination and furnished satisfactory references as to his qualifications and fitness. Defendant, by the terms of the contract, was obliged to discharge any driver whenever required by the Postmaster General so to do. And finally, it was provided that, subject to the approval of the Department, the drivers, motor vehicles, and service, should be at all times under the control of the Postmaster and were to be operated under such schedules as the Postmaster might prescribe. Defendant did on one occasion suspend a driver for a good reason called to its attention by the Postmaster.

The plaintiff, Clarence H. Magann, was employed by defendant on or before July 1, 1937, as the driver of one of its mail trucks. He was so employed during the period involved in this action, which is from October 24, 1938 (the effective date of the Fair Labor Standards Act), to January 7, 1940, when plaintiff voluntarily terminated his employment.

At or before the date upon which the plaintiff entered upon his employment, he took the oath prescribed for those employed in the care, custody and conveyance of mail. He was provided with, and wore while employed, a uniform cap and badge. During his employment as driver of the mail truck, plaintiff took the mails from the Post Office under the directions of the Post Office personnel. Frequently, and at all times when so requested, he transported postal employees with him on the truck, and at all times obeyed the directions of such postal employees in regard to transportation of the mail, and in cases where he was in doubt, he asked for and obtained the directions and instructions of such postal employees.

With the approval of the Postmaster, defendant employed the plaintiff. The amount of plaintiff's compensation was fixed by the defendant, and his compensation was paid to him by defendant. Plaintiff's hours of labor were fixed by defendant.

During the term of his employment, the plaintiff went to work regularly at 5 o'clock P. M. and quit at 5 o'clock A. M. During this twelve-hour period, the plaintiff or-

dinarily went home to supper at approximately 8 P. M., and stayed off duty for approximately one hour. However, whether or not he was able to leave his work at 8 P. M., depended on whether or not a train due at 7:40 P. M. was on time. If it was late, plaintiff was delayed in going to his supper. Between 10:20 P. M. and 11:50 P. M., plaintiff had no duty to perform and was free to go where he chose if a certain train due at 10:20 P. M. was on time. If, however, this train was late, the plaintiff was required to remain at the station and await its arrival. The mail truck driver whose duty ordinarily it was to meet this train was required to meet another train which arrived shortly after 10:40 P. M. at another station, and could not wait for the 10:20 train if it was as much as twenty minutes late. The 10:20 train was as much as twenty minutes late more frequently than it was on time.

As the mails on Sunday were of substantially lesser volume than on week days, only one driver was employed on Sundays in the place of two on week days. As a result of this system, the drivers working on Sunday had less time off on that day than they customarily had on week days.

Taking the average of plaintiff's daily free time, as best I may from the evidence, I find as a fact that plaintiff was off duty one hour during each daily working period, so that he worked an average of eleven hours during each day he was on duty.

Plaintiff customarily alternately worked seven days in one week and six days the next week, he being allowed to be off duty on alternate Sundays. Besides his regular Sunday off, plaintiff took other days off with the permission of the defendant. A statement of the days which I find that plaintiff worked in each week during the period in controversy is attached hereto,[1] I find as a fact that during the period in controversy, defendant worked an aggregate of 379 days. Of this aggregate, during the first year of the Fair Labor Standards Act, i. e., October 24, 1938–October 23, 1939, inclusive, plaintiff worked 314 days of eleven hours each, which is an aggregate of 3,454 hours. The minimum hourly rate of 25 cents per hour, fixed by the act, applied to this aggregate of hours, would make a total of $863.50. During that part of the second year of the Fair

[1] Memorandum of Days which Plaintiff Worked During Period in Controversy.

| Week Beginning: | Less Days NOT on Duty: | Days on Duty: |
| --- | --- | --- |
| 1938 | | |
| Oct. 24 | Sat. | 6 |
| 31 | | 7 |
| Nov. 7 | Sun. | 6 |
| 14 | Sat. | 6 |
| 21 | Sun. | 6 |
| 28 | Fri. & Sat. | 5 |
| Dec. 5 | Sun. | 6 |
| 12 | Mon. | 6 |
| 19 | Sun. | 6 |
| 26 | Mon. | 6 |
| 1939 | | |
| Jan. 2 | Sun. | 6 |
| 9 | Sat. | 6 |
| 16 | Sun. | 6 |
| 23 | | 7 |
| 30 | Sun. | 6 |
| Feb. 6 | | 7 |
| 13 | Sun. | 6 |
| 27 | Sun. | 6 |
| Mar. 6 | Sat. | 6 |
| 13 | Sun. | 6 |
| 20 | Sat. | 6 |
| 27 | Sun. | 6 |
| Apr. 3 | | 7 |
| 10 | Sun. | 6 |
| 17 | Tues. | 6 |
| 24 | Sat. & Sun. | 5 |
| May 1 | | 7 |
| 8 | Tues. & Sun. | 5 |
| May 15 | Fri. | 6 |
| 22 | Thurs. & Sun. | 5 |
| 29 | | 7 |
| June 5 | Sat. & Sun. | 5 |
| 12 | | 7 |
| 19 | Wed. & Sun. | 5 |
| 26 | | 7 |
| July 3 | Sun. | 6 |
| 10 | Sat. | 6 |
| 17 | Sun. | 6 |
| 24 | Wed. | 6 |
| 31 | Sun. | 6 |
| Aug. 7 | | 7 |
| 14 | Sun. | 6 |
| 21 | Sat. | 6 |
| 28 | Sun. | 6 |
| Sep. 4 | | 7 |
| 11 | Sun. | 6 |
| 18 | | 7 |
| 25 | Sun. | 6 |
| Oct. 2 | | 7 |
| 9 | Sun. | 6 |
| 16 | | 7 |
| 23 | Sun. | 6 |
| 30 | Sat. | 6 |
| Nov. 6 | Sun. | 6 |
| 13 | | 7 |
| 20 | Sun. & Mon. | 5 |
| 27 | Thurs. & Fri. | 5 |
| Dec. 4 | Sun. | 6 |
| 11 | | 7 |
| 18 | Sun. | 6 |
| 25 | Mon. | 6 |
| 1940. | | |
| Jan. 1 | (Worked from Mon. Jan. 1 thru Sat. Jan. 6, inclusive) | 6 |

Labor Standards Act which plaintiff worked for defendant, i. e., October 24, 1939–January 6, 1940, inclusive, plaintiff worked 65 days of eleven hours each, an aggregate of 715 hours. The minimum hourly rate of 30 cents an hour, fixed by the act, applied to this aggregate of hours, makes a total of $214.50. For the period here in controversy, at the minimum hourly rates fixed by the act, the plaintiff's total wages would have been $863.50 plus $214.50, an aggregate of $1,078.

As compensation for his services, the plaintiff was paid by the defendant at the rate of $15 per week. For such days as defendant did not work (excepting the alternate Sundays when he was not required to work), the sum of $2.15 was deducted from the plaintiff's salary for each day he failed to work. I find that for the period here in controversy, plaintiff was paid by the defendant the aggregate sum of $878.40, which is 62 weeks at the rate of $15 per week, less deductions of $2.15 per day for twenty-four days which during the period, defendant was off duty in addition to alternate Sundays which he was allowed.

### Conclusions of Law.

Upon my findings of fact as above stated, my conclusions of law are:

■ (1) That the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., is constitutional. The question of the constitutionality of the act was raised by defendant's brief, but not seriously urged, and it would seem that the constitutionality of the act has now been put beyond question by the decisions of the Supreme Court of the United States in United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. ——, 132 A.L.R. 1430, and Opp Cotton Mills, Inc., &c. v. Administrator of the Wage and Hour Division of the Department of Labor, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. ——.

■ (2) That during the period here in controversy, the plaintiff and the defendant were engaged in interstate commerce. This conclusion seems too plain to require the citation of authority.

■ (3) That the plaintiff's employment, as the driver of one of defendant's mail trucks, was an employment which involved safety of operation. United States v. American Trucking Associations, Inc. &c., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345.

(4) During the employment which is the basis of this action, defendant was engaged in transporting United States mails, from the Post Office to and from the railway stations in the City of Lynchburg, under a contract with the Post Office Department, and the plaintiff was employed by defendant to drive a truck engaged solely in transporting such mails. Defendant contends that, by reason of this relationship and the terms of its contract with the Post Office Department, the plaintiff was really employed by the United States, and that the provisions of the act do not apply by reason of Section 3(d) of the Act (Title 29 U.S.C.A. § 203(d), which is as follows: " 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States * * *."

Of course, if defendant prevails on this contention, plaintiff's action would fail and it would be unnecessary to consider the remaining questions involved in the case.

Pursuant to an advertisement for bids, defendant bid for, and was awarded, the contract for carrying the mails from the Post Office to and from the trains in the City of Lynchburg, for a period, covering the time of plaintiff's employment which is the basis of this action. It appears from my findings of fact that the Post Office Department, by this contract, reserved for itself a considerable measure of supervision and control of defendant's operations in carrying out this contract. This may probably be best epitomized by quoting from Section 45 of the "Instructions to Bidders and Postmasters", which was made a part of the contract, and is as follows: "Subject to the approval of the Department, the drivers, motor vehicles and service are to be at all times under the control of the postmaster, and are to be operated under such schedules as the postmaster may prescribe."

On this question of whether or not plaintiff here was an employee of the United States, counsel have cited numerous cases tending to show that the carriage of mail is an exclusive public governmental function, cases on the question of liability for the negligent loss or destruction of mail, cases on the question of liability of mail carriers for negligent operation of vehicles used for the transportation of mail, and cases on questions of taxation growing out of contracts with the Government.

Although I have given them careful consideration, I do not deem it either necessary or useful to review or discuss these cases, because it seems to me that here the avenue of approach to the question is different from that of any of the types of cases mentioned.

The purposes sought by Congress to be accomplished by the enactment of the Fair Labor Standards Act of 1938, are set out as the "Congressional finding and declaration of policy" in Section 2 of the Act (29 U.S.C.A. § 202), as follows:

"(a) The Congress hereby finds that the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.

"(b) It is hereby declared to be the policy of this chapter, through the exercise by Congress of its power to regulate commerce among the several States, to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power."

To carry out such purposes, Congress then proceeded to establish for all employees engaged in interstate commerce or in the production of goods for interstate commerce, minimum wages and maximum hours, and further to prohibit the shipment in interstate commerce of all goods for the production of which oppressive child labor had been employed. Certain exemptions were provided for, none of which has any applicability here except the exemption provided for by Section 13(b) (1), U.S.C.A. Title 29, § 213(b) (1), hereinafter referred to.

Keeping in mind the purposes of the act, it seems only necessary as to this phase of the case to make these pertinent inquiries in regard to the plaintiff: Who employed him; who fixed and paid his wages; and who determined his hours of labor? Obviously, the defendant did all these things. Other aspects of, or consequences of, the employer-employee relationship, seem to me to have no bearing here. Therefore, I must conclude that, certainly for the purposes of this act, defendant, and not the United States, was the employer of the plaintiff.

The only case which has been cited to me, or which I am able to find, directly on this question, is Fleming, Adm'r, etc., v. Gregory, D.C., 36 F.Supp. 776, and in this case the District Court arrived at the same conclusion as the one I have just stated.

See, also, National Labor Relations Board v. Carroll, 1 Cir., June 11, 1941, 120 F.2d 457, which, in applying the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., arrives at the same conclusion.

(5) The next issue is presented by defendant's contention that it is exempted from the operation of Section 7 of the Act, 29 U.S.C.A. § 207, relating to maximum hours of labor, by virtue of Section 13(b) (1) of the Act, 29 U.S.C.A. § 213 (b) (1), which is as follows: "The provisions of section 207 shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; or (2) any employee of an employer subject to the provisions of Part I of the Interstate Commerce Act."

The pertinent part of Section 304 of Title 49 U.S.C.A. is as follows:

"§ 304. *Powers and duties of commission*

"(a) Powers and duties generally. It shall be the duty of the Commission—

"(1) To regulate common carriers by motor vehicle as provided in this part [chapter], and to that end the Commission may establish reasonable requirements with respect to continuous and adequate service, transportation of baggage and express, uniform systems of accounts, records, and reports, preservation of records, qualifications and maximum hours of service of employees, and safety of operation and equipment.

"(2) To regulate contract carriers by motor vehicle as provided in this part [chapter], and to that end the Commission may establish reasonable requirements with respect to uniform systems of ac-

counts, records, and reports, preservation of records, : qualifications and maximum hours of service of employees,. and safety of operation and equipment.

"(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. * * * "

In "Interpretative Bulletin No. 9", originally issued March, 1939, the third revision of which was issued April 11, 1941, the Wage and Hour Division of the United States Department of Labor says: "8. * * * (c) The Interstate Commerce Commission has disclaimed jurisdiction under the Motor Carrier Act of employees engaged in the transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose. See 3 M.C.C. 694, 697. It is the opinion of the Wage and Hour Division that employees of mail contractors are not employees of the United States within the meaning of Section 3(d) of the Fair Labor Standards Act. Fleming v. Gregory [D.C.] 36 F.Supp. 776. It would thus appear that such employees of mail contractors are not within the exemption provided by section 13(b) (1) of the Fair Labor Standards Act and since it would also appear that they are engaged in interstate commerce within the meaning of that section, it is the position of this office that they are entitled to overtime compensation under Section 7 of the Fair Labor Standards Act."

It is true that in the case referred to in the Interpretative Bulletin, Atchison, Topeka & Santa Fe Railway Extension of Operations, 3 Motor Carrier Cases 694, Division 5 of the Interstate Commerce Commission said at page 697: "It is to be observed that authority is sought to transport mail in the same vehicles with express, baggage, and newspapers. The transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose is not subject to the requirements of the act, nor do we believe that special authorization is necessary to permit common or contract carriers by motor vehicle to transport mail in the same vehicle with property moving in interstate or foreign commerce."

This statement, that "The transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose is not subject to the requirements of the act, * * * " would seem to be a precise declaration that the situation presented in the instant case is beyond the purview of the Motor Carrier Act. However, it is to be noted that this question was not before the Commission in the Atchison case. In the Atchison case, there were several applications for certificates of public convenience and necessity for operation as a common or contract carrier by motor vehicle of passengers, baggage, express, mail and newspapers in the same vehicle. The only actual holding of the case in regard to mail, was that special authorization was not required to permit common or contract carriers by motor vehicle to transport mail in the same vehicle with property moving in interstate or foreign commerce.

It is also to be noted that the proposition that contract carriers of mail for the Post Office Department in vehicles used exclusively for that purpose, are not subject to the requirements of the act, is not discussed at all, no authority is cited, and no reason is given for the Commission's disclaimer of authority. It is also to be noted that the Atchison case was decided on December 13, 1937, before the effective date of the Fair Labor Standards Act of 1938. The applicant in the Atchison case was in fact granted a certificate of public convenience and necessity which made its operations subject to the regulation of the Commission.

Again, in Freer Brothers Motor Express Lines Common Carrier Application, 7 Motor Carrier Cases 203, Division 5 of the Commission said at page 207: "Section 208(d) of the act provides that a certificate for the transportation of passengers may include authority to transport mail in the same vehicle with passengers. In Capital Motor Lines Common Carrier Application, 1 M.C.C. 462, we found that the public interest requires that all common carriers of passengers by motor vehicle be authorized to transport mail for the Post Office Department between points served by them, where that department desires such service. The act contains no provision such as that in section 208(d) applicable to carriers of property. However, in Atchison, T. & S. F. Ry. Co. Extension of Operations, 3 M.C.C. 694, we concluded that the transportation of mail under contract with the Post Office De-

partment in vehicles used exclusively for that purpose is not subject to the requirements of the act, and that special authorization was not necessary to permit common or contract carriers by motor vehicles to transport mail in the same vehicle with property moving in interstate or foreign commerce. While applicant's contract is not directly with the Post Office Department, he acts as a subcontractor, and the department has approved the arrangement. We conclude that applicant needs no authority from us to continue the transportation of mail and parcel post under his contract with the railroad. The application therefor will be dismissed."

Again, it is to be noted that the question of whether or not the transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose is subject to the requirements of the Motor Carrier Act, was not before the Commission, the only question there before the Commission being whether or not the applicant, a common carrier, needed authority from the Commission to continue the transportation of mail and parcel post along with the transportation of general commodities, with certain exceptions. It was held that the applicant was required to have a certificate of public convenience and necessity, but that no special authority from the Commission was required to enable applicant to continue the transportation of mail.

The Atchison case, insofar as it holds that no special authorization is necessary to permit common or contract carriers by motor vehicle to transport mail in the same vehicle with passengers or property moving in interstate or foreign commerce, has been followed and cited by the Commission in Albert Lee Nye Extension of Operations, 6 Motor Carrier Cases 661, Conda G. Lashley Extension of Operations, 7 Motor Carrier Cases 53, Teche Lines, Inc., Extension of Operations, 7 Motor Carrier Cases 285, Burlington Transportation Company Extension of Operations, 13 Motor Carrier Cases 275.

The dictum of the Atchison case, "The transportation of mail under contract with the Post Office Department in vehicles used exclusively for that purpose is not subject to the requirements of act, * * *" has been repeated, so far as I have been able to ascertain, only in the Freer Brothers case, supra, and in Fred M. Sutton Common Carrier Application, 18 Motor Carrier Cases 289. However, in the Sutton case, as in the Freer case, this proposition was not under consideration, nor is there any discussion of it.

The question before me is not whether the Commission has taken jurisdiction over the type of motor vehicle carrier here involved, but the question I have to determine is whether or not the Commission, under the provisions of Title 49 U.S.C.A. § 304, has power to "establish * * * qualifications and maximum hours of service" of employees of such carriers as defendant here. The question of whether or not the Commission has exercised such power is immaterial. Whether or not the Commission deems it necessary or expedient so to do, is likewise immaterial.

No case has been cited to me, nor do I find any, where a court has passed on the question of whether or not the Interstate Commerce Commission, under the Motor Carrier Act, Title 49, Section 304, U.S.C. A., has power to "establish * * * qualifications and maximum hours of service" of employees of contract carriers who transport mails under contract with the Post Office Department in vehicles used exclusively for that purpose.

However, paragraph (2) of Section 304, Title 49 U.S.C.A. § 304(a) (2), plainly and in unambiguous terms, gives the Commission power "to regulate contract carriers by motor vehicle as provided in this chapter, and to that end the Commission may establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees * * *."

It must be conceded that defendant here is a contract carrier. Section 3(a) (15) of the Act, 49 U.S.C.A. § 303(a) (15), defines a contract carrier as—"The term 'contract carrier by motor vehicle' means any person, not included under paragraph (14) of this section [which defines common carriers], who or which, under special and individual contracts or agreements, and whether directly or by a lease or any other arrangement, transports passengers or property in interstate or foreign commerce by motor vehicle for compensation."

■ I find nowhere in the Motor Carrier Act any provision which exempts or excepts the defendant here. Consequently, since the defendant is a contract carrier, and the Commission is in terms given power to establish qualifications and maximum hours of service of employees of

such contract carriers, the conclusion, that the Commission had power to establish qualifications and maximum hours of service of the employees of this defendant, and that, therefore, the exemption of Section 13(b) (1) of the Fair Labor Standards Act 29 U.S.C.A. § 213(b) (1), is applicable, seems inescapable.

Counsel for plaintiff have urgently insisted that it is inconsistent to have carriers who operate under contract with the Post Office Department, a great agency of our Government, regulated by a regulatory body such as the Interstate Commerce Commission. Of course, if plaintiff here was an employee of the Post Office Department, an agency of the United States, the Motor Carrier Act would not be applicable to him. This is not by implication or inference, but by reason of the fact that the United States is not a "person" as defined by the act. And by the same token, if such were the case, the provisions of the Fair Labor Standards Act would not be applicable to him.

I can see no inconsistency in the establishment by the Interstate Commerce Commission of qualifications and maximum hours of service of employees of a contract carrier, while that carrier is transporting mail under a contract with the Post Office Department.

■ It is undoubtedly true that great weight must be given to the determination by a commission or board in questions peculiarly within their province. Upon this subject, the Supreme Court, in United States v. American Trucking Associations, 310 U.S. 534, at page 549, 60 S.Ct. 1059, at page 1067, 84 L.Ed. 1345, said: "The Commission and the Wage and Hour Division, as we have said, have both interpreted Section 204(a) as relating solely to safety of operation. In any case such interpretations are entitled to great weight. This is peculiarly true here where the interpretations involve 'contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.' * * *"

■ However, I do not believe that this court should be bound by the Interstate Commerce Commission's dictum in the Atchison case, repeated in the Freer Brothers and the Sutton cases, even when supported by the pronouncement in Interpretative Bulletin No. 9, of April 11, 1941, of the Wage and Hour Division of the Department of Labor, when such dictum is unsupported by authority and pronounced without discussion or statement of reasons therefor, when, in my considered opinion, the plain language of the applicable statutes is directly to the contrary.

It is therefore my conclusion on this question, that defendant in this case is exempted from the operation of Section 7 of the Act, 29 U.S.C.A. § 207, by the provisions of Section 13(b) (1), 29 U.S.C.A. § 213(b) (1).

Although not directly in point here, the cases of Bechtel &c. v. Stillwater Milling Co., D.C., 33 F.Supp. 110, and Faulkner v. Little Rock Furniture Mfg. Co., D.C., 32 F.Supp. 590, tend to support this conclusion.

■ (6) I conclude that Section 6 of the Fair Labor Standards Act, 29 U.S. C.A. § 206, relating to minimum wages, is applicable and binding in this case. This section provides that during the first year from the effective date of this section, every employer to which it is applicable shall pay to each of his employees wages not less than twenty-five cents an hour, and during the next six years from such date, not less than thirty cents an hour. At these rates, I have found in my findings of fact that the defendant should have paid to the plaintiff during the period here in controversy the sum of $1,078, and that during the said period defendant only paid the plaintiff the sum of $878.40, which leaves a balance due under the provisions of the Act of $199.60. Under the provisions of Section 16(b) of the Act, 29 U.S.C.A. § 216(b), it is provided that any employer who violates either Section 6 or Section 7 of the Act, shall be liable to the employee not only for the amount of his unpaid minimum wages or his unpaid overtime compensation, but also shall be liable "in an additional equal amount as liquidated damages". This provision for liquidated damages is mandatory. This section also provides that "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." This provision is also mandatory. I fix the plaintiff's attorney's fee at the sum of $150.

Therefore, an order will be entered awarding a judgment to plaintiff against defendant for the aggregate sum of $549.-

.20, the same being made up of $199.60 unpaid minimum wages, the like sum of $199.-60 as liquidated damages, and the sum of $150 as attorney's fee. Costs will be assessed against the defendant. Interest will be allowed only from the date of judgment.