## DAVIES v. ONYX OILS & RESINS, Inc.
### Civil Action No. 3124.

District Court, D. New Jersey.

Jan. 8, 1946.

William Harris and Joseph H. Lerner, both of Newark, N. J., for plaintiff.

Gross & Gross and Benjamin Gross, all of Jersey City, N. J., and Louis Epstein, of New York City, for defendant.

MEANEY, District Judge.

Plaintiff brings this action under the provisions of the Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq., and seeks to recover the sum of $2,951.16 as overtime and penalties for labor alleged to have been performed. Plaintiff claims to have entered defendant's employ on December 15, 1938, and to have remained so employed continuously until November 18, 1941.

The defendant corporation was incorporated in May 1939 as the successor corporation to the Onyx Laboratories, Inc., and is organized and existing under and by virtue of the laws of the State of New York. At all times during which it employed the plaintiff, the defendant was engaged in the manufacture and production of oils, acids, resins and other allied synthetic chemical solutions and paint products, a substantial portion of which were produced for interstate commerce and were sold and transported in interstate commerce.

Plaintiff alleged in his complaint, and so testified, that he entered the employ of the defendant on December 15, 1938. The proofs upon the trial showed that this defendant was not incorporated until May 10, 1939. Plaintiff was unable to substantiate his allegations that the defendant as successor to the Onyx Laboratories, Inc. assumed the liabilities as the successor corporation to the Onyx Laboratories, Inc. So much of the complaint as related to the period of alleged employment between December 15, 1938 and May 10, 1939 was therefore ordered stricken.

In his complaint and by direct testimony, plaintiff claimed to have entered the employ of the defendant corporation, as stated hereinbefore, on December 15, 1938. From that date until March 8, 1939, plaintiff asserts he was employed on a 54 hour week at an hourly wage rate of 50¢ per hour. For that period he claimed to be entitled to overtime compensation of 75¢ per hour for hours worked in excess of 44 hours, but that no time and a half overtime pay was ever received.

For the period between March 8, 1939, and October 24, 1939, plaintiff asserts that he was employed for 100 hours each week at an hourly rate of 33⅓ cents per hour and during which time he was entitled to overtime at the rate of 50 cents for each hour in excess of 44 hours, but for which period no overtime pay was ever received.

For the period between October 24, 1939, and October 24, 1940, plaintiff asserts that he was employed for 100 hours each week at an hourly rate of 33⅓ cents per hour and during which period he was entitled to overtime compensation at the rate of 50 cents per hour for each hour in excess of 42 hours, but for which period he received no overtime compensation.

For the period from October 24, 1940, until November 18, 1941, plaintiff alleges that he was employed for 100 hours each week at an hourly rate of 33⅓ cents per hour and for which period he was entitled to overtime compensation at the rate of 50 cents per hour for each hour in excess of 40 hours but for which period plaintiff received no overtime compensation. For the total of the periods alleged, plaintiff demands overtime

compensation in the sum of $1,475.55 and an additional amount of liquidated damages, making a total demand by plaintiff in the sum of $2,951.16.

At the trial of this action, plaintiff testified that his employment initially was as a general laborer and truck maintenance man, but that within a few months his duties were enlarged to include loading of trucks, maintenance of trucks, shipping and receiving of goods, some supervision of other employees, the hiring and firing of laborers and the mixing and cooking of chemical solutions and formulae. With these vastly increased duties, plaintiff testified he was given the designation of foreman.

In explanation of his duties, plaintiff testified that the cooking of the solutions required the great portion of his time and attention, and was under his supervision. He testified that the "cooks" were made from two to three times each week, each "cook" taking approximately 18 to 24 hours to complete, and requiring his constant attention and presence.

Thus, plaintiff testified that when such "cooks" were made he remained at defendant's premises from the morning of one day until the evening of the day following. This he testified took place two to three times each week. Plaintiff testified further that he had worked as many as 117 hours a week and on one occasion he had worked one full week without sleep, giving constant attention to his duties.

In addition to the plaintiff's testimony, a fellow employee testified to plaintiff's hours of work, bearing out in broad outline the testimony of the plaintiff.

Plaintiff was definite as to the date of his initial employment on December 15, 1938, going to the extent of proving that the firm for whom he had previously worked as a mechanic had been declared a bankrupt shortly before that date.

The defendant, in its answer and at the trial of the issues, denied entirely plaintiff's allegations of hours of work and periods of employment. Testimony for the defendant was that the plaintiff did not enter the defendant's employment until the first week of January 1940, at which time he was employed at an hourly wage for a 53 hour week.

Defendant denied that plaintiff's duties were anything beyond those of a general laborer and truck maintenance man. While admitting that the plaintiff may on occasion have worked at the "cooks," he did not have supervision of them, and the "cooks" in any event took only from 12 to 16 hours and were not run throughout the night as plaintiff testified. Testimony for the defendant indicated that plaintiff never worked more than 53 hours a week and frequently worked less.

Defendant was unable to produce a complete record of the plaintiff's rate of pay or hours of work. A large number of pay envelopes bearing the notations 53 hours and the plaintiff's signature were introduced in evidence. In addition, defendant's check book stubs were introduced, showing the compensation received weekly by the plaintiff, such notations containing the plaintiff's name for the first time at the end of the first week of January 1940. It would appear, if these records are to be believed, that overtime was figured and made part of the basis of weekly compensation.

Defendant also introduced in evidence a certified copy of the plaintiff's Social Security record on which wages were first reported for the plaintiff by the defendant for January of 1940. This record also affirmatively demonstrated that the plaintiff was employed with an entirely different company during the last three months of 1939.

An examination of plaintiff's testimony would indicate that for a period of 32 months he worked at least 100 hours each week and on frequent occasions as much as 117 hours. On one occasion he testified that he worked one full week without any sleep whatever.

The hours indicated by this testimony, hours alleged to have continued week in and week out, for over two years, seem incredible on their face, and cast discredit on the plaintiff's assertions. The unfavorable inference thus suggested is reinforced by the demonstrated untruth of plaintiff's testimony as to when he first entered the defendant's employment.

Thus it appears that plaintiff has failed to establish with any degree of certainty that he worked in excess of 53 hours or that he was not paid one and one-half times his regular rate for hours worked in excess of the hours prescribed by the Act.

In cases of this sort the plaintiff not only has the burden of proving with reasonable certainty the number of hours of overtime each week and the amount of

wages due each pay period, but to prevail, he must produce evidence definite enough to permit a finding, without resort to guess or conjecture, that he worked some particular number of overtime hours. George Lawley & Son Corporation v. South, 1 Cir., 140 F. 2d 439, 151 A.L.R. 1081; Thompson v. Loring Oil Co., D.C., 50 F.Supp. 213; Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172.

Thus, although I incline to the belief that on some occasions the plaintiff performed overtime work for which he was not paid, there has not been sufficient evidence to sustain the plaintiff's contention that the Act has been violated and that he is entitled to the recovery claimed.

The burden is still upon the plaintiff, regardless of the defendant's failure to keep proper records, to prove that he worked overtime and how much overtime he worked. Wilkinson v. Noland, D.C., 40 F.Supp. 1009.

Since plaintiff has failed to produce evidence that is substantial and convincing and because of his failure to carry the preponderance of the proof, this plaintiff cannot recover.

An order in accordance with the conclusion herein may be entered.