## No. 15,814.

ELECTRON CORPORATION *v.* WILKINS.
(189 P. [2d] 142)

Decided December 15, 1947.   Rehearing denied January 26, 1948.

Mr. THEO. J. ADAMS, for plaintiff in error.

Mr. WALTER F. SCHERER, for defendant in error.

MR. JUSTICE ALTER delivered the opinion of the court.

H. G. WILKINS, defendant in error, to whom we herein refer as plaintiff, brought this action against Electron Corporation, plaintiff in error, designated as defendant, to recover judgment for overtime work while employed by defendant, "liquidated damages," and attorney fees, allegedly due under the provisions of the Fair Labor Standards Act of 1938, 52 U.S. Stat., 1938, c. 676. Upon trial to the court, judgment was entered in favor of plaintiff for $1,272.96, together with a like sum as liquidated damages, and an attorney's fee in the sum of $150, to review which defendant has sued out a writ of error.

Plaintiff in his complaint alleged that the action is brought under the provisions of the Fair Labor Standards Act, supra; that defendant is a Colorado corporation engaged in interstate commerce and that it employed him as a shipping clerk:

"4. That during the approximate period August 1, 1943 to April 15, 1945, inclusive:

"(a) The defendant employed the plaintiff in its business as aforesaid for a total of fifty-eight hours, for thirty-nine work weeks and paid wages to him equal to 98¢ per hour for 48 hours; that under the provisions of the Section 7 of the Act, defendant was required to pay to

the plaintiff for each hour worked in excess of forty in each work week, a sum equal to 1½ times his regular hourly rate of 98¢ per hour; plaintiff was accordingly underpaid the sum of 49¢ per hour, the half-time rate, for each hour worked in excess of forty in each work week, or the sum of $343.98, and plaintiff was underpaid the sum of 98¢ per hour, the straight time rate for ten hours per week, or the sum of $372.20.

"(b) That during the period above referred to the defendant employed the plaintiff for a total of 58 hours for 44 work weeks and paid wages to him equal to $1.08 per hour; that under the provisions of Section 7 of the Act, defendant was required to pay to the plaintiff for each hour worked in excess of 40 in each work week, a sum equal to ½ times his regular hourly rate of $1.08 per hour; plaintiff was accordingly underpaid the sum of 54½ per hour, the half-time rate, for each hour worked in excess of forty in each work week or the sum of $427.68 and defendant was underpaid the sum of $1.08 per hour, the straight time rate, for ten hours per week, or the sum of $475.20."

Defendant in its answer admitted that the action was brought under the provisions of the Fair Labor Standards Act; admitted its corporate existence and its engagement in commerce, and denied that plaintiff was employed as its shipping clerk "whose duties were to receive and prepare for shipping routine goods of the defendant's, including goods shipped in interstate commerce"; admitted that plaintiff was employed by defendant at the times in the complaint mentioned; denied each and every other allegation in said complaint contained.

As a separate defense it is alleged that plaintiff was employed by defendant in an administrative or executive capacity and therefore was not entitled to overtime pay.

There are three specifications of points upon which defendant relies for a reversal, i.e.: (1) The judgment

is contrary to the evidence; (2) the judgment is contrary to the law; (3) the court erred in holding that plaintiff was not an administrative or executive employee. We consider only specifications 1 and 3 of sufficient merit to warrant our consideration, and these will be discussed in that order. There are two cross specifications of points, i.e.: (1) Error in deducting $225 as vacation and severance pay, and (2) inadequacy of the allowance for attorney's fees.

1. Plaintiff's testimony alone was offered in support of his complaint. He testified that prior to August 1, 1943, he was an hourly employee, and the record of his time was kept in a book, he himself entering therein the time he commenced work and the time he left his employment. Subsequently he was advised, upon having a monthly salary of $200, that it was unnecessary for him to continue keeping a record of his time. Respecting the number of hours that he thereafter worked, he testified:

"Q. Now, how many hours a week did you work for the defendant corporation beginning August 1, 1943? A. *About 58 hours a week.* Q. What time of day did you start your employment? A. Seven-thirty in the morning. Q. What time did you quit at night? A. *Usually five-thirty to six, and then often returning at night.* Q. Did you have a regular lunch period? A. Yes. Q. And how long was that? A. An hour. Q. And did you ever work for the defendant nights? A. Yes. Q. How many nights a week? A. Three nights a week. Q. Did you ever work for the defendant Sundays? A. Yes. Q. How many Sundays? A. That was irregular. *Possibly one Sunday a month.* Q. Would it be a full day on Sunday? A. No. Five hours. Q. Did you work in your normal course of duties six eight-hour days? A. Yes. Q. How many hours did you work in excess of forty-eight in each work week? A. *About ten hours each week.*" (Italics ours)

He further testified that while employed at a salary of

$200 a month, he worked a fifty-eight hour work week. He calculated that his overtime amounted to $26.88 a week, making a total of $948.32 due. Correctly calculated, his overtime amounted to $18.24 a week, and, assuming a fifty-eight hour work week for thirty-nine weeks, there would be due him $711.36. He further testified that while on a $225 a month salary with a fifty-eight hour work week, he was employed forty-four weeks, and his overtime per week amounted to $20.52, making a total of $902.88, or a total of $1,851.20 due him for overtime. Correctly calculated, according to plaintiff's testimony, the total sum due him as overtime would be $1,614.20. Plaintiff further testified that while employed on a salary basis he received neither overtime nor "liquidated damages."

On cross-examination plaintiff testified that he did not know how much he was being paid per hour for his labor prior to August 1, 1943; however that it approximated $200 a month. He was asked: "Q. Mr. Wilkins, when did you first conceive the idea of demanding overtime pay from this company? A. *When the War Labor man came out to my house and told me about it.*" (Italics ours)

He testified that, on his demand, his salary was increased from $200 a month to $225 a month; that he did not know how he was classified on the pay roll, nor did he know what steps were necessarily taken by the company in securing this increase, and further: "Q. *Did your company observe legal holidays?* A. Yes, they did. "Q. Did you take those holidays? A. Usually. Part of the time we worked.

\* \* \*

"Q. Did hourly employes during your years with the Electron Corporation receive paid vacations? A. I believe not. Q. Did you receive paid vacations? A. I did get two weeks pay when I was terminated. That is the only two weeks. "Q. You were told to take that? A. Yes. Q. You could have had your vacation at regular

periods and been paid for them, could you? A. I guess so. Q. Could you have had a paid vacation while you were with the company? A. I presume I could. Q. At the time you were terminated, did you receive two-weeks pay for vacation. A. I did. Q. At the time you were terminated, did you receive any other pay? A. I received two weeks advance pay. Q. That was called severance pay? A. Yes.

\* \* \*

"Q. You were paid for the regular holidays during that period of time [August 1, 1943 to April 15, 1945]? A. That is right. Q. Have you given any credit here for your holidays pay? A. No." (Italics ours)

At the conclusion of all the evidence, plaintiff's attorney stated: "If your Honor please, to eliminate any question as to the wages in this case, the plaintiff now agrees to stipulate that he will waive any claim for wages for the *seven holiday weeks about which there has been some testimony.* We offer now a corrected schedule as to the plaintiff's claim, less those seven weeks. \* \* \* We will not make a claim for the seven weeks' time in which a holiday occurred, although we would still be entitled to the ten hours' overtime; but to clarify the case, so there won't be any confusion about that issue, we will waive altogether those particular weeks, and I have a schedule covering the testimony of the plaintiff less those weeks."

Plaintiff thereupon made a calculation, which was marked as Exhibit B. It was unidentified, and there was no evidence to support it, but apparently the court accepted it as the basis of its judgment. It is as follows:

| | |
|---|---|
| 18 hours at ½ rate .48 for 36 weeks | $ 311.04 |
| 10 hours at .96 for 36 weeks | 345.60 |
| 18 hours at ½ rate .54 for 41 weeks | 398.52 |
| 10 hours at 1.08 for 41 weeks | 442.80 |
| | $1497.96 |

From this total the court deducted $225 as vacation and severance pay received by plaintiff at the time of his termination of service and entered judgment for $1,-272.96 plus an equal amount as "liquidated damages," and $150 attorney's fee.

If the court's judgment was based on competent evidence from which it could determine the number of hours plaintiff was employed in each work week and the basic rate of pay, the court adopted a correct method in determining the amount of the judgment.

It will be remembered that plaintiff testified that defendant observed legal holidays, and plaintiff eliminated from his complaint seven weeks in which it was said that there were seven holidays, "about which there has been some testimony." There is no such testimony in the record. Between August 1, 1943, and April 15, 1945, this being the period involved in plaintiff's employment with defeandant, there were twenty-one legal holidays (section 1, chapter 79, '35 C.S.A.). On how many, if any, of these legal holidays defendant worked is left entirely to conjecture and speculation. Respecting the number of hours that he worked in a work week, his answer was, *"about 58 hours a week."* When asked as to his time of beginning and ceasing work, he answered, "Seven-thirty in the morning.", and *"Uusually five-thirty to six,* and then often returning at night." When asked about his Sunday work, he answered, "That was irregular. *Possibly one Sunday a month."* When asked if the company observed legal holidays, he replied, "Yes, they did." When asked if he took these holidays, he replied, "Usually. Part of the time we worked." When asked how many hours he worked in excess of forty-eight hours in each week, he answered, *"About 10 hours each week."*

■ ■ The burden was upon plaintiff to prove by a preponderance of the evidence that he did not receive the wages to which he was entitled under the provisions of the Fair Labor Standards Act, and to show by com--

petent evidence—not resting on conjecture, speculation, indefiniteness or uncertainty — the number of hours which he was employed in each work week in excess of forty hours. It is not sufficient for the employee to ground his right of recovery on a mere estimated average of overtime work. To base a judgment on such uncertain and conjectural evidence would be mere speculation, and such a judgment would amount to mere speculation. *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 Sup. Ct. 1187, 90 L. Ed. 1515; *Jax Beer Co. v. Redfern,* 124 F. (2d) 172; *Johnson v. Dierks Lumber & Coal Co.,* 130 F. (2d) 115; *George Lawley & Son Corporation v. South,* 140 F. (2d) 439; *Mt. Clemens Pottery Co. v. Anderson,* 149 F. (2d) 461; *Johnson v. Blankenship,* 152 F. (2d) 99; *Wilkinson v. Noland Co.,* 40 F. Supp. 1009; *Epps v. Weathers,* 49 F. Supp. 2; *Thompson v. Loring Oil Co.,* 50 F. Supp. 213; *Davies v. Onyx Oils & Resins, Inc.,* 63 F. Supp. 777.

The record discloses that prior to August 1, 1943, the date fixed by plaintiff as the one on which he changed from an hourly to a monthly rate of pay, he recorded in a book provided by the company the hour when he commenced and the time when he ceased work, and compensation for all overtime due him was paid. According to the record plaintiff was employed on an hourly basis prior to August 1, 1943, and subsequent thereto on a salary basis. Plaintiff offered no evidence that other duties or responsibilities were added or that his hours of employment were increased. This being so, the work record was available to plaintiff and would have furnished substantial evidence of the hours of his employment, and, even if his hours increased after his change of status to a monthly employee, that could have been rather accurately established by plaintiff's testimony as to increased duties, if any such there were. Such evidence would have provided some substantial basis for a judgment, and the burden being upon plaintiff, as we

have said, it was incumbent upon him to produce competent and relevent evidence in support of his demand.

■ It has been repeatedly held that section 16 (b) of the Fair Labor Standards Act does not provide a penalty, but is a provision for compensation for labor performed and services rendered. The Fair Labor Standards Act, section 7, provides that during the period here involved the standard work week shall consist of forty hours, and for all hours worked in excess thereof the employee is entitled to pay at the rate of one and one-half times his regular rate of pay; it also provides, section 16 (b), for liquidated damages of one and one-half times the regular rate of pay, as well as a reasonable sum as attorney's fee. If the judgment is affirmed, plaintiff, on the indefinite and uncertain evidence produced, would be entitled to recover for his overtime employment three times his regular rate of pay, and to permit the judgment here to stand upon such evidence would sanction an unwarranted liberality and unconscionable generosity.

■ We are mindful of the fact that under section 11 (c) of the Fair Labor Standards Act; it is obligatory upon the employer to "make, keep and preserve" certain records of the wages, hours and other conditions respecting employees. In the present case, for the time in question, no such records were made, kept and preserved; nevertheless this does not inure to the benefit of the employee nor relieve him of the necessity of submitting competent and substantial evidence in support of his claim. *Wilkinson v. Noland Co., supra; Davies v. Onyx Oils & Resins, Inc., supra.*

We do not hold that in actions involving claims for overtime compensation under the provisions of the Fair Labor Standards Act an employee must establish by competent evidence his overtime hours with the same exactitude and accuracy as prevails in some actions, but we do hold that his evidence must establish his claim with reasonable certainty and accuracy so as to leave

an inescapable inference that he is entitled to overtime payments, and the amount thereof.

We animadvert that several months after plaintiff's employment ceased, according to plaintiff's testimony, "the War Labor man came out to my house and told me about it [claim for overtime, liquidated damages and attorney fees]." We think it regretable that government employees deem it a part of their official duties to stir up litigation between private employers and employees.

We recognize it to be our duty to affirm judgments of trial courts when there is competent evidence to support them; but in this case the only evidence offered in support of the overtime hours for which plaintiff seeks compensation is so vague, indefinite and uncertain as to amount to no evidence whatever, and any judgment based thereon would be conjectural and speculative. Here the record shows the judgment respecting compensation due plaintiff to be clearly erroneous.

It rightly may be said that we have disposed of this action upon a specification not argued in defendant's brief, but the determinative question here is presented in the specifications of points, and the fact that its importance and decisiveness was not fully appreciated by counsel does not relieve us of the duty of making a correct determination, nor oblige us to disregard the record supporting the specification.

2. It is the contention of defendant that plaintiff was an administrative or executive employee, and as such exempt from the provisions of section 16 (b), supra. While plaintiff categorically denied that he possessed the various qualifications necessary for either of those classifications, and defendant produced evidence otherwise, nevertheless, there being competent evidence before the court to support its finding that plaintiff was neither an administrative nor executive employee, we consider this finding binding, and it will not be disturbed.

The judgment, accordingly, is reversed, with instructions to dismiss.

MR. JUSTICE HILLIARD dissents.

*On Petition for Rehearing.*

MR. JUSTICE ALTER.

In plaintiff's petition for rehearing his counsel urges that we have overlooked or misunderstood and wholly disregarded the decisions of the United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.*, 328 U. S. 680, cited in our opinion. See, also, *Anderson v. Mt. Clemens Pottery Co.*, 69 F. Supp. 710, and 162 F. (2d) 200. That decision was carefully studied and fully considered, and we reached the conclusion that in the instant case the evidence supporting plaintiff's cause of action was such as to raise no "just. and reasonable inference," as was said therein, that would support a judgment in his favor, and to that conclusion we still adhere.

In our opinion we stated that the decisive and determinative question upon which we based our reversal of the judgment had not been argued here by either party, although it was within the purview of one of the specifications of points. We might also have stated that while plaintiff himself was the only witness offering evidence that would bring him within the provisions of the Fair Labor Standards Act of 1938, entitling him to a judgment for overtime pay, liquidated damages and attorney fees, defendant produced six witnesses, most, if not all of whom, testified to facts which tended to establish that plaintiff was an administrative or executive employee as defined in section 13 (a) of said Act, and therefore not entitled to recover under the provisions of section 7 thereof.

Considering the conditions and circumstances disclosed by this record and in justice and fairness to the

parties involved, the judgment is reversed and the cause remanded for retrial of the issues presented by the pleadings.

The petition for rehearing is denied.